Ezra Winter and Edna A. Winter v. Commissioner.
Winter v. Commissioner
Docket No. 105441.
United States Tax Court
1942 Tax Ct. Memo LEXIS 20; 1 T.C.M. (CCH) 274; T.C.M. (RIA) 42671; 12/22/1942
*20 1. Expenses connected with a private residence and incurred by petitioners after they had abandoned it as a residence but before it had been leased to others, held personal and nondeductible, even though they were actually paid by petitioners, who were on the cash basis, after the residence had been leased. 2. The expense of operating a farm upon which petitioners resided held on the evidence to be personal. 3. The deductibility of various other expenses determined from the evidence submitted. Benjamin Mahler, Esq., for the petitioners. Thomas R. Charshee, Esq., for the respondent. ARUNDELL
Memorandum Findings of Fact and Opinion ARUNDELL, Judge: Petitioners challenge the Commissioner's action in disallowing various expense and loss deductions which, with other disallowances that are not contested, resulted in the determination of a deficiency of $3,664.24 in income tax for the calendar year 1936. The questions presented are primarily questions of fact as to whether the claimed deductions were personal and therefore nondeductible, or were incurred in a trade or business or in the production of income. The facts in respect of each issue will be followed by the opinion disposing *21 of that issue. Issue No. 1 Findings of Fact Petitioners are husband and wife residing in Falls Village, Connecticut. They filed a joint income tax return for the year 1936 with the Collector for the district of Connecticut. They kept their records and filed their return on the cash basis. In 1930 Mrs. Winter, (then Edna N. Albert) at a cost of $100,000, purchased an apartment in a cooperative apartment house known as One East End Avenue Corporation, in New York City. The purchase took the form of a 99-proprietary lease and shares of stock in the corporation. The expenses of operating the apartment building were charged monthly against the various tenants and were paid by them as proprietary rent. Mrs. Winter expended approximately $17,000 on alterations to her apartment and in addition, between the years 1930 and 1936, she spent the sum of $118,000 on furniture, furnishings, etc. Petitioners were married in 1932. They resided in the apartment part of the time through 1933 and a part of 1934. Mr. Winter was the owner of a farm in Connecticut. In 1934 petitioners abandoned the apartment in New York City as a residence and moved to the farm, where they have since resided. The *22 apartment was offered for rent and for sale through brokers and by advertisements during the year 1935. With the exception of two bedrooms that were not wanted by the tenant, the apartment was finally rented furnished on February 14, 1936 for a period of three months. It was thereafter rented to another tenant on June 6, 1936 under a lease extending into 1937. Except for intervals between leases the apartment has been rented continuously since then. Petitioners have not occupied the apartment during the intervals between leases. The two bedrooms were rented from time to time under separate leases, and when not so rented were used as a storage place for furnishings that were not used by the tenants. The rental income received by petitioners in 1936 amounted to $7,836. During 1936 petitioners paid the amount of $16,204.14 as proprietary rent to the One East End Avenue Corporation, $10,000 of which represented assessments for operating expenses during 1936, and the balance, $6,204.14, represented amounts that should have been paid in 1935. Petitioners also paid $616.50 in 1936 for ordinary repairs and expenses connected with the rental of the apartment. Petitioners claimed on their *23 return, and respondent disallowed in full, a deduction of rental loss in the amount of $8,984.64, the difference between the payments and receipts connected with the apartment. Opinion The parties have briefed the question as one involving a loss under section 23 (e) of the Revenue Act of 1936. Since the filing of briefs the Revenue Act of 1942 has been enacted, section 121 of which permits the deduction of "all the ordinary and necessary expenses paid or incurred during the taxable year for the production or collection of income, or for the management, conservation, or maintenance of property held for the production of income." The amendment is retroactive to the year before us. Respondent takes the position that expenses incurred prior to the actual letting of the property are personal expenses and therefore nondeductible. In this we think he is correct in so far as this case is concerned. It is well settled that the mere abandonment of a house as a personal residence and unsuccessful efforts to rent or sell it do not constitute the carrying on of a trade or business, nor does such action constitute the entering into of a transaction for profit such as would permit the deduction *24 of losses and expenses incident thereto. ; ; , certiorari denied, ; , certiorari denied, ; ; ; . The reasoning of these decisions is that something must occur to preclude the owner from changing his mind and resuming his residence in the property before it can be said to be devoted exclusively to business ends. The Regulations have for many years contained a provision that a loss arising from the sale of a private residence may be deducted only if it had been "rented or otherwise appropriated to income-producing purposes and is used for such purposes * * *." See Regulations 94, article 23 (e)-1. The provision of *25 the new Act allowing deduction of expenses paid for the production or collection of income is substantially the same. In the Rumsey case the court held that it strains the language of the Regulations "to find that the property is 'appropriated to' and 'used for' income producing purposes by merely listing it with a broker for sale or rental. There was nothing in the present case to prevent petitioners from resuming their residence in the apartment at any time prior to February 1936. It is not enough that they had a residence elsewhere. It follows that the expenses incurred prior to the actual letting of the premises were personal expenses. They would not have been deductible had they been paid when incurred and they were not made deductible by payment after the property had been devoted to commercial purposes. The fact that petitioners were on the cash basis is immaterial. It does not alter the nature of the expenses. Consequently, the amount of $6,204.14 paid to the apartment corporation for 1935 may not be deducted. This also applies to the pro rata part of the $10,000 paid for 1936 which represents the first month and one-half before the apartment was rented. With these exceptions *26 the balance of the expenditures, which appear to have been ordinary and necessary expenses paid for the production of income, are deductible. We have noted respondent's suggestion that some apportionment be made for the two bedrooms that were not rented; but we think it is without merit. The rooms were excluded from the leases only because the tenants did not want them, and they were used merely to store furnishings that the tenants did not desire to use. As such, they were indirectly devoted to the commercial enterprise. Issue No. 2 Findings of Fact For some time prior to 1936 Mrs. Winter had conducted the business of manufacturing and selling Odorono, a perspiration preventative, and Glazo, a nail polish. Prior to 1936 she sold this business to the Northam Warren Corporation, receiving in payment cash and stock in that company. She became a vice president and director of the company, and it was understood that she would remain active in the business, at least in an advisory capacity. The company was a family corporation of the Northam Warren family, and Mrs. Winter was the only stockholder who was not a paid employee. Her only source of income from the business was dividends. *27 An unfriendly situation developed between Mrs. Winter and other directors of the corporation, whereupon it became necessary for Mrs. Winter personally to devote time and money in protecting her investment and procuring the declaration of dividends. Since the corporation refused to furnish her with information deemed necessary to protect her interests, she made extensive investigations, with the assistance of an accountant, respecting the policies and expenditures of the company and its competitors. She attended all directors' meetings and other meetings, some of which were called at her request. The accountant prepared reports which Mrs. Winter utilized in an effort to have the company adopt what she considered to be businesslike policies and also in compelling dividend payments. For these services the accountant was paid $750 in 1936. A secretary was also employed by Mrs. Winter, whose services were devoted exclusively to matters pertaining to the Northam Warren Corporation, the renting of the apartment, and incidental business matters for Mr. Winter. The secretary received the amount of $1,365.40 for her services during the tax year. The above services were ordinary and necessary *28 for the production of income and the management and conservation of property held for the production of income. The accountant also audited the books and records of petitioners and prepared their tax return. He received $450 for this work, one-half of which is allocable to expenses incurred for the production of income. The Commissioner disallowed the $1,200 accounting fees upon the ground that they were connected with investments and did not represent ordinary and necessary business expenses. He allowed $682.70 of the secretarial expense and disallowed the balance as a personal expense. Opinion While petitioners claimed the amount of $1,404.79 for secretarial expense on their return, the Commissioner held that payment of only $1,365.40 had been substantiated, fifty per cent of which he apportioned to business purposes. At the hearing petitioners' counsel accepted respondent's determination that the payments did not exceed $1,365.40 and limited his claim accordingly. Respondent's contention is that the disallowed secretarial expense is personal because the rental of the apartment and protection of Mrs. Winter's investment in the corporation did not constitute a trade or business *29 under the rule of . The expense, however, is covered by section 121 of the Revenue Act of 1942 and should be allowed. The same applies to $750 of the accountant's fees. The balance of such fees should, we think, be apportioned between personal and business expense. Ordinarily, professional fees connected with income tax matters of individuals are personal rather than business expenses. . All of petitioners' expenses were entered in a cash book and the principal task in auditing the books and preparing the return was apparently to segregate the personal expenses from those that were deductible. Since there were a great many items of each class, a fair result will be obtained by dividing the fees evenly and permitting one-half thereof to be deducted. Issue No. 3 Findings of Fact Mr. Winter purchased a farm in Connecticut in 1929 and then acquired the two adjoining farms. Together they comprised nearly 600 acres. Most of the farm was mountainous timber land, and the timber constituted its principal value. One of the farms had been used as a *30 dairy farm and another as a chicken, fruit and berry farm. Mr. Winter had lived on a farm in his youth and had always wanted to acquire one. He was interested in plants and trees. He had in mind continuing to operate the farms as they had been. He never sold any milk, however, and a severe winter prior to the tax year killed many of the fruit trees. Beginning in 1935, petitioners raised approximately 3,000 chickens and sold eggs and chickens to nearby camps and a few restaurants. They also bottled and sold maple syrup. On their return for 1936 they reported gross income from the sale of farm products in the amount of $461.01. Petitioners have since discontinued raising chickens and bottling syrup, because the remuneration was not commensurate with the work involved. In 1934 petitioners began studying about medical herbs and in 1935 they planted an herb garden. Mrs. Winter experimented with the herbs and developed various cosmetics, medicines and culinary products made from herbs. She began selling these products after 1936 and in 1939 she engaged commercially in the herb business. In 1940 she advertised her products somewhat extensively and today they are sold in all of the states. *31 Only about two and one-half or three acres were devoted to growing herbs. Petitioners resided on the farm during the tax year. Mr. Winter, who is a mural painter by profession, had his studio there. Petitioners were not dependent upon the farm for a livelihood. On their joint return for 1936 petitioners deducted farm expenses of $2,751.16, which, offset in part by the farm income of $461.01 and rental of buildings in the sum of $268.00, resulted in a claimed loss of $2,022.15. Respondent disallowed the loss. There were three houses situated on the farms when Mr. Winter acquired them. Two were fairly good sized and the other was a cottage. They were of wooden construction and were run down. Mr. Winter repaired them, installed plumbing, heating and light fixtures, and built an electric plant. His expenditures approximated $31,000, of which approximately $7,000 was spent upon the house that was used by petitioners as a residence. The other two houses were rented from time to time. Opinion While petitioners testified that they expected to operate the farm at a profit, we think the record taken as a whole supports respondent's determination. The farm was largely mountainous and wooded *32 land. Petitioners had their residence on the farm and Mr. Winter had his studio there. Petitioners' principal reliance is upon the herb activities, which apparently have developed to a considerable extent in subsequent years, though only two or three acres out of a 600-acre farm are utilized for that purpose. But even this contention fails in the light of Mr. Winter's testimony that his wife definitely went into it as a business about 1939, three years after the taxable year. The almost insignificant amount of gross proceeds from the sale of farm produce discredits the view that any sort of business or income-producing activities were carried on. The claim for depreciation of two of the farm dwellings, which was advanced for the first time in the amended petition, must also be denied. There is no satisfactory basis in the record upon which depreciation could be figured. Mr. Winter testified in a general way that he spent about $31,000 in improving and repairing the three houses located on the farm and in constructing an electric plant. He apportioned $7,000 of this amount to the house that was used as petitioners' residence, leaving the balance of $24,000 to be attributed to the *33 electric plant and the other two dwellings, at least one of which appears to have been only a cottage. Rental from "cottages" in the tax year was reported on the return to have been the minor sum of $268, an amount entirely out of line with the alleged capital expenditure. Furthermore, the schedule attached to the return entitled "Farm Income and Expenses" contains a notation that a personal house had been sold for $2,000 at a loss. There is no showing of the actual cost of either of the buildings on which depreciation is claimed, nor of the character of all of the repairs and improvements which are alleged to have been made. In this unsatisfactory state of the record we cannot find a basis upon which depreciation may be computed, and the deduction is therefore disallowed. Issue No. 4 Findings of Fact During the year 1936 Mr. Winter made several business trips to Washington, D.C., Rochester, New York, and Indiana. Mrs. Winter made several trips to New York City for business purposes. Their combined traveling expenses were $1,932.11, of which respondent allowed $500 in the notice of deficiency. Mr. Winter paid $987.40 to studio assistants during the tax year, which amount was *34 allowed as a deduction in the notice of deficiency. In addition, however, various laborers on the farm did work connected with the studio. They handled large equipment, constructed scaffolds and cleaned the studio once a week. Of the amount paid such laborers in 1936 the sum of $907.97 is allocable to their services in connection with the studio and represents ordinary and necessary business expenses. Opinion While the evidence is not as satisfactory as it could be, we think the traveling expenses as claimed are allowable in full. Respondent does not appear to seriously dispute the amounts that were paid for this purpose, and entries in the cash book, supported in part by oral testimony, totaled more than the amount claimed. The same applies to the studio help. Issue No. 5 Findings of Fact During 1936 Mr. Winter paid alimony of $300 per month to his former wife. A daughter then under the age of 18 was living with the former wife and the alimony supported both the wife and daughter. The former wife had income from no other source. Opinion Claim is made for dependency credits of $400 each for the divorced wife and minor daughter. Section 25 (b) (2) allows a credit for each *35 person other than husband or wife "dependent upon and receiving his chief support from the taxpayer if such dependent person is under eighteen years of age or is incapable of self-support because mentally or physically defective." The credit for the divorced wife must be denied, for there is no showing that she was mentally or physically incapable of supporting herself. The explicit requirement of the statute must be met for allowance of the credit. As to the daughter, however, who was a minor and received her chief support from petitioner, a $400 credit is allowable. , . Decision will be entered under Rule 50.